***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of these cases, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Sedgwick CMS as its servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment on October 4, 1999. This injury was denoted as I.C. No. 214470. Defendant filed an I.C. Form 60, on which they admitted compensability for the accident. At the time of this accident, plaintiff's average weekly wage was $927.33, which yielded the maximum compensation rate of $560.00.
5. The issues for determination are:
a. Whether plaintiff sustained an injury by accident arising out of and in the course of his employment on May 21, 2002, and if so, to what benefits may he be entitled under the Act.
b. Is plaintiff entitled to permanent and total disability compensation as a result of the injuries that he sustained on May 21, 2002.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. From December 18, 1998, until December 2, 2002, plaintiff served as the elected Sheriff of Hoke County.
2. At the time of the hearing, plaintiff was a 56-year-old high school graduate who had attended some college. After high school, plaintiff served three years in the Army. Plaintiff did not win re-election in 2002. He had previously worked in law enforcement in Washington, D.C., for the U.S. Marshal Service, the General Services Administration, the D.C. Police, and other federal agencies. He had preexisting hypertension, high cholesterol, and obesity. In addition, he had a number of prior workers' compensation injuries while employed with the federal government. In 1988, plaintiff sustained a back injury in which he herniated a disc; however, he did not have surgery for this injury.
3. On October 4, 1999, plaintiff was walking down the concrete-floored hallway to his Deputy's office when he slipped in water on the floor that had leaked from a water cooler. As a result of the slip, he fell flat on his back, striking his head on the concrete. Plaintiff lost consciousness, which he regained after arriving at the emergency room of Moore Regional Medical Center. This injury by accident was accepted as compensable by the filing of a Form 60 in I.C. File 214470.
4. Plaintiff worked intermittently following the accident. Although he was in pain and was suffering from loss of memory, he felt that his duties required him to supervise the 51 members of his staff.
5. Following the fall, plaintiff was authorized to treat with his family physician, Dr. Karen Smith, for head, back and neck injuries. During the course of treatment on October 6, 1999, plaintiff reported memory lapses and disconnection of thoughts. Dr. Smith later referred him for a neurological evaluation due to his continued complaints of back pain.
6. Dr. Smith evaluated plaintiff again on October 11, 1999, and noted that he reported having quite a bit of neck discomfort, particularly in the posterior aspect of the head, with associated headache. Plaintiff complained of being somewhat disoriented with loss of words. He also complained of low back pain and some slight intermittent changes in vision. Physical therapy was ordered. Dr. Smith's assessment was of persistent low back discomfort with posterior occipital discomfort.
7. Dr. Smith saw plaintiff again on October 25, 1999, and indicated that plaintiff had not been able to resume his full-time work due to his symptoms, and was to be evaluated by a neurologist (Dr. Martin Chipman) within a one-week period of time. Dr. Smith indicated that the trial of physical therapy had aggravated his lower back discomfort. She noted that his blood pressure was very well controlled at that time.
8. Dr. Smith evaluated plaintiff on November 24, 1999, and noted that he had undergone neurological evaluation with Dr. Chipman and that a recommendation had been made for plaintiff to participate in the Total Rehabilitation program at Sandhills with aquatic therapy. She noted the history of L4-L5 herniated disk and recommended neurosurgical evaluation. Dr. Smith noted plaintiff had blood pressure elevation, post-traumatic headache, and history of hyperlipidemia.
9. Dr. Smith saw plaintiff again on December 29, 1999, and noted the presence of persistent low back discomfort status post fall and memory impairment. She noted he was to be seen by Dr. Harbin for psychological testing to determine the nature of the memory problem with further recommendations for treatment to be made.
10. Plaintiff was seen by Dr. Smith on May 10, 2001, with complaints of exacerbation of low back pain. She noted that he had utilized medication, aquatic and massage therapy following the injury of October 1999, but that his symptoms had actually worsened over time. The patient reported that the majority of this discomfort was in the L4-L5 region of the back and was associated with headache and poor sleep. Blood pressure aggravation was noted as well. He reported that his symptoms worsened with an increase in activity at work, particularly with standing or walking. Dr. Smith's assessment was of exacerbation of L4-L5 back pain, somewhat uncontrolled hypertension, and hyperlipidemia.
11. Dr. Smith saw plaintiff again on May 31, 2001, and reported that he indicated his pain level was 8 out of 10 on most days, which disrupted his sleep and interfered with his daily activities. Dr. Smith saw him again on October 4, 2001, and on December 14, 2001. On March 1, 2002, Dr. Smith noted the presence of persistent headaches with associated nausea and indicated they were awaiting the results of MRI. An MRI of the lumbar spine was done on March 2, 2002, and noted posterior disk protrusion at the L4-L5 level, causing a moderate severe central canal stenosis as well as severe left and mild right neural foramina encroathrnent as well as degenerative changes in the articular facets at the L4-L5 and L5-S1 level.
12. Plaintiff was seen by Dr. Shupeck, neurosurgeon, on December 9, 1999, at the request of Dr. Smith. He noted that the patient had back pain with spinal stenosis, and that there was not an attractive surgical option. Dr. Shupeck recommended continuing additional conservative therapy. He saw plaintiff again on July 5, 2001, and noted that the patient had leg pain, which may be radicular.
13. Dr. Zane Walsh saw Mr. Davis on March 5, 2002, and noted that the patient's low back pain with disk protrusion had been unresponsive to conservative treatment. He indicated that EMG was recommended, but plaintiff refused, having had one before and feeling it was too painful. Plaintiff did consent to a neurosurgical evaluation. Dr. Walsh's April 11, 2002, note indicated that the patient had seen Dr. Bruce Jaufmann, whose notes were reviewed. Plaintiff was noted to report having had one episode of terrible back pain and a visit to the emergency department, during which he received a Demerol injection. He indicated plaintiff planned to decrease his work hours and wished to be enrolled in skill therapy. Dr. Walsh's assessment was of chronic low back pain and lumbar degenerative disk with mild stenosis. His plan was for aquatic therapy, therapeutic exercise with mobilization/massage, neuropsych battery to rule out traumatic brain injury, lumbar corset with metal stays, and follow-up after neuropsych battery and therapy. Dr. Walsh's April 25, 2002, clinic note revealed that his neurological examination remained stable, and that Dr. Jaufmann's notes were reviewed.
14. Plaintiff was driving his Sheriff's vehicle on May 21, 2002, on his way to treat again with Dr. Walsh in connection with his October 4, 1999, compensable injury when his vehicle was struck from behind by a tractor-trailer truck. Plaintiff testified, and the Full Commission finds as fact, as follows:
 I had a scheduled appointment with Dr. Walsh at three-thirty that afternoon. I had appointments in my office all afternoon. I think I came into the office late, and I had appointments in my office up to two-thirty — two fifteen, something like that. I left the office and was in route to Dr. Walsh's office and — in Fayetteville, straight up 401 — — —
 I received a telephone call on my cell saying that there was a person from some state agency or organization wanting to meet me at the county line, at the restaurant there.
 So as I approached the County Line Plaza, I put on my turn signal, as normal and required by law, and — to make a right turn into the plaza, and as I turned into the parking lot, I was struck by a tractor-trailer.
The impact forced plaintiff's vehicle into a utility pole, at which time the air bag deployed. Plaintiff was taken to the emergency room at Cape Fear Valley Medical Center, where he was seen following the work-related motor vehicle accident. Plaintiff complained of neck and back pain, but had no loss of consciousness, nausea, vomiting, vision changes, or dizziness. X-rays of the C-spine, L-spine and T-spine were completed and plaintiff was cleared by the radiologist. The family had requested a CT, and those results were pending review. The patient was given Demerol and Phenergan.
15. On May 23, 2002, plaintiff returned to Dr. Walsh following the motor vehicle accident. He reported developing blurred vision, tenderness at the back of his head, difficulty swallowing, neck pain, wrist pain, an increase in his low back pain, and bilateral ankle pain following the accident. On examination, Dr. Walsh found plaintiff had bruising around his eyes, muscle tenderness around the shoulders and neck, and left wrist swelling. Dr. Walsh ordered physical therapy and continued to offer conservative treatment.
16. In mid-June of 2002, Dr. Gamboa reviewed plaintiff's medical records and performed a battery of tests. Thereafter, Dr. Gamboa diagnosed plaintiff with a pain disorder associated with psychological factors, and found he had exaggerated concern over and frequent reports of excessive bodily complaints, chronic feeling of anger and hostility, which he attempted to control with complaints of pain. She found plaintiff's chronic hypertension should be considered as a possible cause of his cognitive problems.
17. On November 7, 2002, Dr. Walsh diagnosed plaintiff with post-concussive syndrome with cognitive impairment and chronic low back pain. A repeat MRI on December 10, 2002, showed progression of his degenerative spinal stenosis.
18. As of December 2, 2002, plaintiff ceased serving as Sheriff in Hoke County at the end of his term of office, after the winner of the election was sworn in to begin performing the duties of the elected office.
19. By December 10, 2002, Dr. Walsh found plaintiff to be permanently and totally disabled from working due to the compensable 1999 injury as exacerbated by his compensable injury of May 21, 2002, while he was enroute for treatment for his compensable 1999 injury.
20. On August 4, 2003, neuropsychiatrist Dr. C. Thomas Gualtieri evaluated plaintiff. As a result of the evaluation, Dr. Gualtieri reported that he thought plaintiff's profile was more consistent with generalized brain disease rather than with traumatic brain injury. He expected that plaintiff would be fully recovered from the effect of the automobile accident within two years of the accident.
22. Dr. Walsh was plaintiff's treating physician, whereas Dr. Gualtieri was not. The Full Commission gives greater weight to the testimony of Dr. Walsh concerning the impact of both compensable injuries on plaintiff's immediate ability to work. However, the Full Commission gives greater weight to the testimony of Dr. Gualtieri with respect to plaintiff's ability to return to work in some capacity.
23. There was no evidence that the County did not pay plaintiff his full salary as Sheriff through December 2, 2002, the day he ceased being Sheriff of Hoke County. Therefore, he is only entitled to worker's compensation benefits of $560.00 a week from December 2, 2002, through May 21, 2004.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has proved that his compensable accident of May 21, 2002, resulted in an inability to earn wages from December 2, 2002, until May 21, 2004.
2. Plaintiff is entitled to medical compensation both for the accepted claim in I.C. No. 214470 and the contested claim in I.C. No. 254435. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff $560.00 a week from December 2, 2002, through May 21, 2004, subject to the attorney fee set forth below. Interest at eight percent (8%) per year is due from May 7, 2003. All of the interest is payable to plaintiff and no attorney fee is due with respect to the interest. These amounts have accrued and, thus, seventy-five percent (75%) of the compensation shall be paid to plaintiff and twenty-five percent (25%) shall be paid to plaintiff's attorney as a reasonable attorney's fee.
2. Defendant shall pay for all treatment, drugs, and related medical care required by reason of the compensable accidents of October 4, 1999, and May 21, 2002.
3. Defendant shall pay the costs.
This 13th day of January 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER